**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:                                )
                                      )
Kevin and Sandra McDonald,            )    Chapter 13
                                      )    Case No. 06-10478
            Debtors                   )

**ORDER ON OBJECTION TO CONFIRMATION**

Kevin and Sandra McDonald (the "Debtors") have filed a Chapter 13 plan providing for, among other things, the cure and maintenance of the mortgage indebtedness on their primary residence held by National City Mortgage ("National"). Their plan has been confirmed on an interim basis subject to National's objection.

The Debtors were in default for non-payment of the mortgage prior to bankruptcy. They have not objected to the allowance of National's mortgage claim as a fully secured claim in the amount of $81,129.42. Since the last payment on the mortgage debt is due after the final plan payment, the plan provides for the curing of the pre-bankruptcy default and the maintenance mortgage payments as permitted under 11 U.S.C. § 1322(b)(5).[1] The curing of the default is to be accomplished with periodic payments made in two sets of equal monthly installments. $153.15 is to be paid monthly during months 1 - 12 and $179.05 is to be paid during months 13 - 52.[2] The maintenance payments are to conform to the monthly installments under mortgage

---

[1] Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq.*

[2] National asserts that the correct amount of the arrearage is $7,509.48. The proposed cure payments total $8999.80. This variance is to be corrected in an amended plan.

1

contract for the duration of the 55 month plan.[3]  All cure and maintenance payments are to be made through the trustee.

The parties acknowledge that the plan, as currently proposed, will allow the Debtors to pay their Chapter 13 legal fees before the default cure is completed.  It is this prospect that National finds vexing.  Recognizing that such an occurrence is not otherwise prohibited, National's sole and very precise objection to confirmation is that the Debtors' cure proposal fails to meet the requirements for distribution of periodic payments under § 1325(a)(5)(B)(iii)(I), a provision introduced into the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Public Law 109-8, 119 Stat. 23.  National insists that this new sub-part of § 1325(a)(5)(B) is implicated because there are only three ways to confirmation when an allowed secured claim is provided for by a plan:  acceptance by the holder under § 1325(a)(5)(A), lien retention and distribution according to § 1325(a)(5)(B), or surrender of the collateral under § 1325(a)(5)(C).  Acceptance has been refused by National and surrender has been declined by the Debtors, leaving lien retention and distribution as the Debtors' only path to confirmation.

Subsection § 1325(a)(5)(B)(i) governs lien retention.  As revised by BAPCPA, it requires that the lien securing a claim provided for under a plan must be retained until the earlier of payment of the underlying debt or discharge under § 1328.  See § 1325(a)(5)(B)(i)(I).  Further, a plan must provide that a lien securing such a claim shall be retained pursuant to nonbankruptcy law if the case is dismissed or converted.  See  § 1325(a)(5)(B)(i)(II).

---

[3] There is also a slight discrepancy between the parties on the amount of the mortgage maintenance monthly installments.  It too is to be corrected in an amended plan.

Distribution is governed by § 1325(a)(5)(B)(ii). It is unchanged by BAPCPA and provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . ." Subsection 1325(a)(5)(B)(iii)(I) was added by BAPCPA. It establishes the method of distribution when the property to be distributed to the holder of a secured claim provided for by a plan is to be disbursed in periodic payments. Subsection 1325(a)(5)(B)(iii)(I) provides that "if property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts . . . ."

National argues that "equal monthly amounts" means one set of monthly installment payments, not two sets as proposed by the Debtors. For this reason, National insists that the Debtors' plan must fail. Most of the few reported cases that have discussed the meaning of "equal monthly amounts" appear to support National's position. See e.g., In re Lemieux, 347 B.R. 460, 464 (Bankr. D. Mass. 2006)(Plan was not confirmed because the debtor proposed equal monthly payments and one final balloon payment on a mortgage that matured during the term of the plan.); In re Wagner, 342 B.R. 766, 772 (Bankr. E. D. Tenn. 2006)(Confirmation denied because the debtor proposed equal monthly payments and one final balloon payment within the term of the plan on a mortgage that matured after the plan.); In re Desardi, 340 B.R. 790, 807 (Bankr. S. D. Tex. 2006) (distinguishing between equal monthly payments on the claim under § 1325(a)(5)(b)(iii)(I) and adequate protection payments under § 1325(a)(5)(B)(iii)(II)); In re Hill, 2007 WL 499622 (Bankr. M. D. N. C. 2007)(same). Only one reported case supports the Debtors' notion that cure payments under a plan may be made in other than equal monthly installments. See In re Davis, 343 B.R. 326, 328 (Bankr. M. D. Fla. 2006)("Based upon the

historical analysis of the interplay between Section 1322(b)(5) and Section 1325(a)(5)(under which Section 1325(a)(5)(b)(iii) falls). . . equal monthly payments are not required as the claim at issue is one in which arrears on long term debt are being cured.").

The reasoning in Davis is attractive, but not persuasive. Davis, like the matter at hand, was a cure and maintain case under § 1322(b)(5). Subsection 1322(b)(5) states:

> notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due
> . . .

There was a time when this provision may have permitted a debtor to cure of a default on a long term mortgage by paying off the arrearage within a reasonable time while a case was pending. That time came to an end when the Supreme Court determined that a provision in a plan for the cure of an arrearage under § 1322(b)(5) was a proposal for modifying a secured claim under § 1325(a)(5). See Rake v. Wade, 508 U. S. 464 (1993). Moreover, the amendments that added § 1322(e) to the Code did not entirely remove cure payments from coverage under § 1325(a)(5).

The underlying question in Rake was whether or not interest could be charged on arrearage cure payments being made under a plan. Holding that the cure payments, despite their origin under § 1322(b)(5), are provided for by the plan, the Court determined that interest may be charged under § 506(b) and § 1325(a)(5)(B). Id. at 472. Leaving little doubt and even less leeway on where cure payments fall under the Code for confirmation purposes, the Court stated:

> Petitioners' interpretation of §§ 1322(b) and 1325(a)(5) is refuted by the plain language of the Code. Section 1325(a)(5) applies by its terms to "each allowed secured claim provided for by the plan." The most natural reading of the phrase to "provid[e] for by the plan" is to "make a provision for" or "stipulate to"

something in a plan.  See, *e. g.*, American Heritage Dictionary 1053 (10th ed. 1981) ("provide for" defined as "to make a stipulation or condition").  Petitioners' plans clearly "provided for" respondent's home mortgage claims by establishing repayment schedules for the satisfaction of the arrearages portion of those claims.  As authorized by § 1322(b)(5), the plans essentially split each of the respondent's secured claims into two separate claims - the underlying debt and the arrearages.  While payments of principal and interest on the underlying debts were simply "maintained" according to the terms of the mortgage documents during the pendency of the petitioners' cases, each plan treated the arrearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plans.  Thus, the arrearages, which are a part of respondent's home mortgage claims, were "provided for" by the plans, and respondent is entitled to interest on them under § 1322(a)(5)(B)(ii).$^{9}$

_____

$^{9}$ Petitioners' argument that "modified" claims cannot include home mortgage claims that have been "cured" does not withstand scrutiny.  When a plan cures a default and reinstates payments on a claim, the creditor's contractual rights arising from the default – which in this case included the right to declare all payments due and payable, accelerate the debt, possess the property, collect rents generated by the property, and foreclose on the property, see App. 14-15, 29-30 – are abrogated and therefore "modified."  These modifications are allowed under § 1322(b)(5) "notwithstanding" the fact that § 1322(b)(2) generally prohibits the modification of the rights of home mortgage holders.  Petitioners' construction of § 1322(b)(2) also leads to the incongruous result that only home mortgage claims would be denied the benefits of § 1325(a)(5).  By prohibiting modifications of the rights of holders of home mortgage claims, Congress could not have intended, in our view, to afford the holders of these claims *less* protection than the holders of other secured claims.

Id. at 473.

Congress was unhappy with the result in Rake and responded immediately with the

enactment of § 1322(e), which provides:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

Pub. L. No 103-394, § 701(b)(2)(D)(effective October 22, 1994).[9]  The House Report describes § 1322(e) as having the effect of overruling Rake.

> Notwithstanding State law, [the Rake case] has had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction.

H.R. Rep. No 835, 103d Cong., 2d Sess. 55 (1994), 140 Cong. Rec. H10,770 (daily ed. Oct. 4, 1994)(remarks of Rep. Jack Brooks).

Certainly, Rake has been checked with respect to interest on cure payments.  Congress stated in § 1322(e) that "the amount necessary to cure the default [under § 1325(a)(5)(B)(ii)] shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."  But § 1322(e) did nothing to upset Rake's determination that a cure proposal under § 1322(b)(5), with or without interest, is a proposal to modify a secured claim under a plan.  As such, it must meet the requirements of § 1325(a)(5).

Although the Debtors' cure proposal satisfies all of the lien retention and other distribution requirements of §1325(a)(5), it fails to meet the test for equal monthly payments under § 1325 (a)(5)(B)(iii)(I).

---

[9] The 1994 amendments also added § 1322(c)(1), making it clear that a debtor may cure a mortgage default on his residence until the property is sold at foreclosure sale, and (c)(2), providing that when a residential mortgage becomes due during the term of a chapter 13 plan, the claim may be modified pursuant to § 1325(a)(5).

Therefore, National's objection to confirmation is sustained.  Confirmation is denied without prejudice.

SO ORDERED.

DATED: August 17, 2007

Louis H. Kornreich
Chief Judge, United States Bankruptcy Court